

FILED
IN OPEN COURT

APR 2 5 2012

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | Case No. 1:12cr159 |
| ) | |
| v. ) | Count One: |
| ) | Sex Trafficking of Children Conspiracy |
| JUSTIN DEONTA STROM, ) | (18 U.S.C. § 1594) |
| a.k.a. "Jae," ) | |
| a.k.a. "Jae Dee," ) | Counts Two, Four, and Six through Ten: |
| a.k.a. "J-Dirt," ) | Sex Trafficking of a Child |
| ) | (18 U.S.C. § 1591) |
| Defendant. ) | |
| ) | Counts Three and Five: |
| ) | Transportation of Minors |
| ) | (18 U.S.C. § 2423) |

INDICTMENT

April 2012 Term – At Alexandria

Count One

THE GRAND JURY CHARGES THAT:

1. Beginning in and around 2007 and continuing through in and around March 2012, within the Eastern District of Virginia and elsewhere, the defendant, JUSTIN DEONTA STROM, also known as "Jae," "Jae Dee," and "J-Dirt," did unlawfully, knowingly, and intentionally combine, conspire, confederate, and agree together with Christopher Sylvia, Michael Tavon Jefferies, also known as "Loc," and other persons known and unknown to the grand jury (known collectively as "members of the conspiracy") to commit the following offense: To knowingly, in and affecting interstate commerce, recruit, entice, harbor, transport, provide, obtain, and maintain by any means a person, knowing, and in reckless disregard of the

fact, that the person had not attained the age of 18 years, and would be caused to engage in a commercial sex act, all in violation of 18 U.S.C. § 1591.

## WAYS, MANNER, AND MEANS TO ACCOMPLISH THE CONSPIRACY

2. The primary purpose of the conspiracy was to make money through the prostitution of females, including juveniles. The ways, manner, and means by which this purpose was carried out included the following:

3. The members of the conspiracy included, among others, members and associates of the Underground Gangster Crips street gang. It was part of the conspiracy that members of the conspiracy advised the juvenile female prostitutes of their membership in, and association with, the gang, in order to, among other reasons, intimidate and coerce the juvenile female prostitutes to participate in or continue participating in commercial sex acts.

4. It was part of the conspiracy that members of the conspiracy would appoint one female who was responsible for recruiting, instructing, and maintaining contact with the juvenile female prostitutes.

5. It was part of the conspiracy that members of the conspiracy recruited, both through in-person contact and the internet, juvenile females to work as prostitutes. The internet is an avenue of interstate commerce.

6. It was part of the conspiracy that members of the conspiracy required or caused the juvenile females to engage in sexual acts with members of the conspiracy before engaging in commercial sex acts with customers. Members of the conspiracy referred to these sex acts as a "demo" or "tryout," which also served, among other reasons, as a method to groom the juvenile female prostitutes.

7.  It was further part of the conspiracy that members of the conspiracy arranged for customers to have sexual intercourse with the juvenile female prostitutes for money. Members of the conspiracy recruited customers through in-person contact and by placing advertisements on the internet.

8.  It was further part of the conspiracy that members of the conspiracy arranged for juvenile female prostitutes to have sex with clients for money in the basement of a townhouse located in Lorton, Virginia, or in vehicles, both of which were located within the Eastern District of Virginia, which members of the conspiracy referred to as "in calls."

9.  It was further part of the conspiracy that members of the conspiracy transported the juvenile female prostitutes and other members of the conspiracy to locations throughout the Eastern District of Virginia to engage in commercial sex acts.

10. It was further part of the conspiracy that once members of the conspiracy and the juvenile female prostitutes arrived at a location to engage in commercial sex acts, members of the conspiracy walked with the juvenile female prostitutes, soliciting customers and ensuring the safety of the juvenile female prostitutes.

11. It was further part of the conspiracy that members of the conspiracy provided the juvenile females with condoms, which traveled in interstate or foreign commerce, to facilitate the prostitution scheme. It was further part of the conspiracy that members of the conspiracy provided the juvenile female prostitutes with narcotics and alcohol, which traveled in interstate commerce, in order to keep the juvenile female prostitutes sedated and compliant, and as a reward or payment for engaging in commercial sex acts.

12. It was further part of the conspiracy that members of the conspiracy shared a portion of the proceeds received from customers as payment for commercial sex acts engaged in by the juvenile female prostitutes.

## OVERT ACTS

13. In and around the summer of 2007, STROM recruited A.N., who was 16 years of age at the time, to engage in commercial sex acts.

14. In and around the summer of 2007, Sylvia walked with A.N. to solicit customers to engage in commercial sex acts with A.N. and to ensure A.N.'s safety.

15. In and around the summer of 2007, STROM provided alcohol and marijuana to A.N.

16. In and around the summer of 2007, STROM purchased condoms for A.N. to use while engaging in commercial sex acts.

17. In and around the summer of 2007, A.N. engaged in commercial sex acts.

18. Between in and around March 2009 and in and around September 2009, STROM recruited R.H., who was 16 years of age at the time, to engage in commercial sex acts.

19. Between in and around March 2009 and in and around September 2009, STROM engaged in a "demo" or "tryout" with R.H.

20. Between in and around March 2009 and in and around September 2009, an unindicted co-conspirator (UCC1) walked with R.H. to solicit customers to engage in commercial sex acts with R.H. and to ensure R.H.'s safety.

21. Between in and around March 2009 and in and around September 2009, STROM and UCC1 provided R.H. with narcotics.

22. Between in and around March 2009 and in and around September 2009, STROM and UCC1 provided R.H. with condoms for use during commercial sex acts.

23. Between in and around March 2009 and in and around September 2009, a member of the conspiracy purchased hotel rooms where R.H. was maintained.

24. Between in and around March 2009 and in and around September 2009, R.H. engaged in commercial sex acts.

25. In and around 2011, a member of the conspiracy posted hundreds of messages on internet websites to include Facebook.com, Datehookup.com, and Myspace.com, sometimes using false identities, including "Rain Smith," "Mimi Jackson," and "Aaliyah Marie," to recruit juvenile females into prostitution.

26. Between in and around May 2011 and in and around September 2011, a member of the conspiracy, using the false identity "Rain Smith," placed a message on Facebook.com recruiting S.S., who was 17 years of age at the time, to engage in commercial sex acts.

27. Between in and around May 2011 and in and around September 2011, an unindicted co-conspirator (UCC2) transported S.S. to engage in commercial sex acts.

28. Between in and around May 2011 and in and around September 2011, STROM provided S.S. with narcotics.

29. Between in and around May 2011 and in and around September 2011, STROM, UCC2, and another male engaged in a "demo" or "tryout" with S.S.

30. Between in and around May 2011 and in and around September 2011, S.S. engaged in commercial sex acts.

31. Between in and around May 2011 and in and around September 2011, UCC2 transported A.B., who was 16 years of age at the time, to engage in commercial sex acts.

32. Between in and around May 2011 and in and around September 2011, a member of the conspiracy provided A.B. with alcohol.

33. Between in and around May 2011 and in and around September 2011, STROM, UCC2, and another male engaged in a "demo" or "tryout" with A.B.

34. Between in and around May 2011 and in and around September 2011, A.B. engaged in commercial sex acts.

35. In and around November 2011, M.W. placed a message on Facebook.com recruiting J.T., who was 17 years of age at the time, to engage in commercial sex acts.

36. In and around November 2011, SYLVIA and UCC2 transported J.T. to engage in commercial sex acts.

37. In and around November 2011, STROM, Jefferies, and UCC1 provided J.T. with alcohol and narcotics.

38. In and around November 2011, Jefferies engaged in a "demo" or "tryout" with J.T.

39. In and around November 2011, Jefferies, UCC1 and M.W. walked with J.T. to solicit customers to engage in commercial sex acts with J.T. and to ensure J.T.'s safety.

40. In and around November 2011, STROM took a nude photograph of J.T. on a cellular telephone.

41. In and around November 2011, J.T. engaged in commercial sex acts.

42. On or about November 18, 2011, a member of the conspiracy placed an advertisement on Craiglist.com soliciting customers to engage in commercial sex acts.

43. On or about November 20, 2011, a member of the conspiracy placed three advertisements on Craiglist.com soliciting customers to engage in commercial sex acts.

44. On or about November 24, 2011, UCC1 purchased a credit card from a 7-11 store for the purpose of placing advertisements on Backpage.com soliciting customers to engage in commercial sex acts.

45. On or about November 25, 2011, a member of the conspiracy placed an advertisement on Backpage.com soliciting customers to engage in commercial sex acts.

46. On or about November 25, 2011, a member of the conspiracy placed an advertisement on Craigslist.com soliciting customers to engage in commercial sex acts.

47. In and around December 2011, Jefferies purchased a credit card from a 7-11 store for the purpose of placing advertisements on Backpage.com soliciting customers to engage in commercial sex acts.

48. On or about December 8, 2011, a member of the conspiracy placed an advertisement on Backpage.com soliciting customers to engage in commercial sex acts.

49. On or about December 17, 2011, a member of the conspiracy placed an advertisement on Craigslist.com soliciting customers to engage in commercial sex acts.

50. On or about December 24, 2011, a member of the conspiracy placed an advertisement on Craigslist.com soliciting customers to engage in commercial sex acts.

51. On or about December 25, 2011, a member of the conspiracy placed an advertisement on Craigslist.com soliciting customers to engage in commercial sex acts.

52. Between in and around January 2012 and in and around February 2012, M.W., recruited J.E., who was 17 years of age at the time, at the Fairfax County Juvenile Detention Center, to engage in commercial sex acts.

53. Between in and around January 2012 and in and around February 2012, Sylvia transported J.E. to engage in commercial sex acts.

54. Between in and around January 2012 and in and around February 2012, M.W. walked with J.E. to solicit customers to engage in commercial sex acts with J.E. and to ensure J.E.'s safety.

55. Between in and around January 2012 and in and around February 2012, J.E. engaged in commercial sex acts.

(In violation of Title 18, United States Code, Section 1594.)

## Count Two

(Sex Trafficking of a Child)

THE GRAND JURY FURTHER CHARGES THAT:

In and around the summer of 2007, within the Eastern District of Virginia, and elsewhere, JUSTIN DEONTA STROM, also known as "Jae," "Jae Dee," and "J-Dirt," did knowingly, in and affecting interstate commerce, recruit, entice, harbor, transport, provide, obtain, and maintain by any means A.N., knowing, and in reckless disregard of the fact, that A.N. had not attained the age of 18 years, and would be caused to engage in a commercial sex act.

(In violation of Title 18, United States Code, Sections 1591 and 2.)

## Count Three

(Transportation of Minors)

THE GRAND JURY FURTHER CHARGES THAT:

In and around the summer of 2007, JUSTIN DEONTA STROM, also known as "Jae," "Jae Dee," and "J-Dirt," did knowingly, in interstate commerce, transport A.N., who had not attained the age of 18 years, from the Eastern District of Virginia to the District of Columbia, with the intent that A.N. engage in prostitution.

(In violation of Title 18, United States Code, Sections 2423 and 2.)

## Count Four

(Sex Trafficking of a Child)

THE GRAND JURY FURTHER CHARGES THAT:

Between in and around March 2009 and in and around September 2009, within the Eastern District of Virginia, and elsewhere, JUSTIN DEONTA STROM, also known as "Jae," "Jae Dee," and "J-Dirt," did knowingly, in and affecting interstate commerce, recruit, entice, harbor, transport, provide, obtain, and maintain by any means R.H., knowing, and in reckless disregard of the fact, that R.H. had not attained the age of 18 years, and would be caused to engage in a commercial sex act.

(In violation of Title 18, United States Code, Sections 1591 and 2.)

## Count Five

(Transportation of Minors)

THE GRAND JURY FURTHER CHARGES THAT:

Between in and around March 2009 and in and around September 2009, JUSTIN DEONTA STROM, also known as "Jae," "Jae Dee," and "J-Dirt," did knowingly, in interstate commerce, transport R.H., who had not attained the age of 18 years, from the Eastern District of Virginia to the District of Maryland, with the intent that R.H. engage in prostitution.

(In violation of Title 18, United States Code, Sections 2423 and 2.)

## Count Six

(Sex Trafficking of a Child)

THE GRAND JURY FURTHER CHARGES THAT:

Between in and around May 2011 and in and around September 2011, within the Eastern District of Virginia, JUSTIN DEONTA STROM, also known as "Jae," "Jae Dee," and "J-Dirt," did knowingly, in and affecting interstate commerce, recruit, entice, harbor, transport, provide, obtain, and maintain by any means S.S., knowing, and in reckless disregard of the fact, that S.S. had not attained the age of 18 years, and would be caused to engage in a commercial sex act.

(In violation of Title 18, United States Code, Sections 1591 and 2.)

## Count Seven

### (Sex Trafficking of a Child)

THE GRAND JURY FURTHER CHARGES THAT:

Between in and around May 2011 and in and around September 2011, within the Eastern District of Virginia, JUSTIN DEONTA STROM, also known as "Jae," "Jae Dee," and "J-Dirt," did knowingly, in and affecting interstate commerce, recruit, entice, harbor, transport, provide, obtain, and maintain by any means A.B., knowing, and in reckless disregard of the fact, that A.B. had not attained the age of 18 years, and would be caused to engage in a commercial sex act.

(In violation of Title 18, United States Code, Sections 1591 and 2.)

## Count Eight

(Sex Trafficking of a Child)

THE GRAND JURY FURTHER CHARGES THAT:

In and around November 2011, within the Eastern District of Virginia, JUSTIN DEONTA STROM, also known as "Jae," "Jae Dee," and "J-Dirt," did knowingly, in and affecting interstate commerce, recruit, entice, harbor, transport, provide, obtain, and maintain by any means J.T., knowing, and in reckless disregard of the fact, that J.T. had not attained the age of 18 years, and would be caused to engage in a commercial sex act.

(In violation of Title 18, United States Code, Sections 1591 and 2.)

<u>Count Nine</u>

(Sex Trafficking of a Child)

THE GRAND JURY FURTHER CHARGES THAT:

Between in and around November 2011 and in and around February 2012, within the Eastern District of Virginia, JUSTIN DEONTA STROM, also known as "Jae," "Jae Dee," and "J-Dirt," did knowingly, in and affecting interstate commerce, recruit, entice, harbor, transport, provide, obtain, and maintain by any means M.W., knowing, and in reckless disregard of the fact, that M.W. had not attained the age of 18 years, and would be caused to engage in a commercial sex act.

(In violation of Title 18, United States Code, Sections 1591 and 2.)

<u>Count Ten</u>

(Sex Trafficking of a Child)

THE GRAND JURY FURTHER CHARGES THAT:

Between in and around January 2012 and in and around February 2012, within the Eastern District of Virginia, JUSTIN DEONTA STROM, also known as "Jae," "Jae Dee," and "J-Dirt," did knowingly, in and affecting interstate commerce, recruit, entice, harbor, transport, provide, obtain, and maintain by any means J.E., knowing, and in reckless disregard of the fact, that J.E. had not attained the age of 18 years, and would be caused to engage in a commercial sex act.

(In violation of Title 18, United States Code, Sections 1591 and 2.)

A TRUE BILL

Pursuant to the E-Government Act, the original of this page has been filed under seal in the Clerk's Office.

FOREPERSON

Neil H. MacBride
United States Attorney

Marc J. Birnbaum
Special Assistant United States Attorney

Inayat Delawala
Assistant United States Attorney

17